IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ASHTON MEDICAL ASSOCIATES, INC.

                Plaintiff,

v.                                            CIVIL ACTION NO. 2:05-cv-00023

AETNA HEALTH MANAGEMENT, INC.,
a Delaware corporation, and
ELAINE RADER,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the plaintiff's motion to remand [Docket 7]. Also pending is the defendant Elaine Rader's motion to dismiss [Docket 3] and the defendant Aetna Health Management Inc.'s motion to dismiss [Docket 5]. For the reasons discussed herein, the court has determined that defendant Rader was fraudulently joined in this action to destroy diversity jurisdiction, and, accordingly, the plaintiff's motion to remand [Docket 7] is **DENIED**. Because defendant Rader was fraudulently joined, all of the claims against her are **DISMISSED**, and her motion to dismiss [Docket 3] is **DENIED as MOOT**. Pursuant to the "Agreed Order" submitted by the parties and entered on February 8, 2005, the plaintiff has 14 days from the entry of this order in which to respond to Aetna's motion to dismiss [Docket 5], which shall remain pending before the court.

**I.  Background**

**A.  Facts**

The following facts are alleged in the complaint.  The plaintiff, Ashton Medical Associates, Inc., is comprised of a group of four physicians with an office in Kanawha County, West Virginia.  In April of 2003, Ashton entered into a "Physicians Group Agreement" (provider agreement) with Aetna, a health insurer incorporated in Delaware.  Under the terms of the provider agreement, Ashton agreed to provide medical services to patients insured by Aetna, and in exchange, Aetna agreed to reimburse Ashton for its services at one-hundred and thirty percent (130%) of the medicare reimbursement rate.  In July of 2003, Ashton allegedly noticed that it was being reimbursed by Aetna at a lower rate than the level specified in the provider agreement.

Upon discovering this alleged discrepancy, Ashton began to contact Aetna, primarily through Elaine Rader, a "Provider Relation Liaison."  From August of 2003 through January of 2004, Ashton allegedly made multiple inquiries regarding this matter and attempted to resolve the problem numerous times.  Ultimately, in February of 2004, the matter was submitted to arbitration pursuant to the terms of the provider agreement.  The arbitrator, however, has stayed those proceedings to allow Ashton to file a civil complaint, which it did on December 6, 2004, in the Circuit Court of Kanawha County, West Virginia.

The defendants have since removed the action to this court based on the following two alternative grounds:  (1) federal question jurisdiction because the plaintiff's claims are completely preempted by ERISA; or (2) diversity jurisdiction because defendant Rader was fraudulently joined.  The plaintiff has moved to remand the case to the Circuit Court of Kanawha

County. The parties have briefed the issues and the motion is ripe for decision. I will address the two alternative grounds for removal in order.

## II. Analysis

### A. Complete Preemption Under ERISA

This court recently discussed the application of the complete preemption doctrine under ERISA in *Radcliff v. El Paso Corporation*, 2005 WL 1693723 (S.D. W. Va. 2005). Although *Radcliff*, which involved a worker seeking ERISA-regulated benefits from his employer, is factually distinct from the instant case, the overall complete preemption analysis remains the same. This court may properly exercise federal question jurisdiction over this case only if ERISA *completely* preempts the plaintiff's claims. *Id*. at *2.

According to the Supreme Court, when determining whether a cause of action is completely preempted by ERISA, a district court must inquire into the following two factors: (1) whether the plaintiff could have originally brought his cause of action under ERISA's civil enforcement provisions and (2) whether the cause of action involves any independent legal duty on the part of the defendants. *Aetna Health, Inc. v. Davila*, 124 S. Ct. 2488, 2496 (2004) ("If an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely preempted by ERISA § 502(a)(1)(B)."). If the first question is answered affirmatively and the second negatively, then this court may properly exercise jurisdiction over this case. I will address these questions in turn.

First I must determine whether the plaintiff could have originally brought his cause of action under ERISA § 502(a)(1)(B). That section states, in pertinent part, that "[a] civil action

may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  In general, "when a state law claim may fairly be viewed as an alternative means of recovering benefits allegedly due under ERISA, there will be preemption."  *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 258 (4th Cir. 2005).

In this case, Ashton was being directly reimbursed pursuant to the provider agreement for providing medical services to patients insured by Aetna.  The substance of the injury described in the complaint is that "Aetna systematically and wrongfully, without prior notice to Ashton, made reductions in payments that are not allowed under the Physicians' Group Agreement." Complaint at ¶ 36.  Ashton therefore seeks redress for an injury allegedly committed in violation of the provider agreement, which is not an ERISA-regulated plan.  It is immaterial whether the patients insured by Aetna who received medical treatment by Ashton are covered by ERISA plans.  Ashton is clearly not seeking benefits under those plans and is not trying to enforce any right created by those plans.  Benefit determinations are unrelated to this case.  Instead, the primary issue is whether Aetna fulfilled its contractual obligations under the provider agreement.

Under the second part of the *Davila* test, the provider agreement clearly gives rise to legal duties that are independent of ERISA.  As I have noted, the provider agreement is not an ERISA-regulated plan.  It is simply a contract between two businesses.  Accordingly, it is subject to any state common law or statutory causes of action that may apply to contracts of this nature. The defendant's alleged actions in this case, therefore, implicate independent legal duties.

This situation seems analogous to the independent legal duties, noted by the Supreme Court in *Davila*, 124 S. Ct. at 2498, that formed the basis of the cause of action in *Caterpillar Inc. v. Williams*.  482 U.S. 386 (1987).  In *Caterpillar*, several former employees sued their employer for breach of contract.  482 U.S. at 390.  The defendants removed the case to federal court on the grounds that their alleged liability stemmed from rights created by a collective bargaining agreement.  *Id*.  Accordingly, the defendants argued that the plaintiffs' claims were completely preempted by § 301 of the Labor Management Relations Act, 1947 (LMRA), which is one of the few federal statutes with preemptive power on par with ERISA.  *Id*.  The Supreme Court disagreed.  Finding that the plaintiffs had relied on "individual employment contracts" rather than "a right created by a collective-bargaining agreement," the Court determined that the plaintiffs had consciously "eschew[ed] claims based on federal law."  *Id*. at 398-99.  Accordingly, because the plaintiff's claims were in no way based on rights created by the federally-regulated contract, there was no basis for federal jurisdiction and the case could not be removed.  *Id*. at 399.  Similarly, and based on my application of the *Davila* factors to this case, I **FIND** that the plaintiff's claims are not completely preempted by ERISA and, therefore, this court may not exercise federal question jurisdiction over this case.

This finding is in accordance with the case law developed in the Southern District of West Virginia.  In *Pritt v. Blue Cross and Blue Shield of West Virginia, Inc*., 699 F. Supp. 81 (S. D. W. Va. 1988), Judge Haden reached the same conclusion based on a closely analogous dispute arising out of a provider agreement between a physician and an insurer.  Judge Haden held:

> [T]he Plaintiff does not bring this action to recover benefits
> assigned to him by participants or beneficiaries of an ERISA

-5-

>covered plan. Rather, Plaintiff alleges that Defendant breached the
>terms of the provider contract. This fact, coupled with the fact that
>the law regards provider agreements as direct purchases of
>services, leads the court to the conclusion that contract law should
>govern disputes relating to the provider agreement, and not
>ERISA.

*Id.* at 84. At least two United States Courts of Appeals have reached the identical conclusion when presented with the same type of factual situation. In *Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.*, 187 F.3d 1045 (9th Cir. 1999), the Ninth Circuit held "that the Providers' claims, which arise from the terms of their provider agreements and could not be asserted by their patient-assignors, are not claims for benefits under the terms of ERISA plans, and hence do not fall within § 502(a)(1)(B)." *Id.* at 1050. Importantly, and analogous to this case, the Ninth Circuit found that "[t]he dispute here is not over the *right* to payment, which might be said to depend on the patients' assignments to the Providers, but the *amount*, or level, of payment, which depends on the terms of the provider agreements." *Id.* at 1051. Similarly, in *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393 (3d Cir. 2004), the Third Circuit adopted the Ninth Circuit's reasoning in *Anesthesia Care*. The Third Circuit examined a cause of action allegedly arising from a breach of a provider agreement, and found that ERISA did not completely preempt the plaintiff's claims because the "right to recovery, if it exists, depends entirely on the operation of third-party contracts [provider agreements] executed by the Plan that are independent of the Plan itself." *Id.* at 402.

Because ERISA does not completely preempt the plaintiff's claims in this case, no federal question is presented by the complaint. This court therefore lacks jurisdiction over this

matter unless the requirements for diversity jurisdiction are met.  I turn now to that question.

**B.  Fraudulent Joinder Doctrine**

An action may be removed to a federal district court if it is one over which the district court would have original jurisdiction.  28 U.S.C. § 1441(b).  Federal district courts have original jurisdiction over actions between citizens of different states when the matter in controversy exceeds the sum or value of $75,000.  28 U.S.C. § 1332.  The statute authorizing diversity jurisdiction requires "complete diversity" of citizenship between the parties to a controversy.  28 U.S.C. § 1332; *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806).  Accordingly, no party involved in a diversity suit may share common citizenship with any party on the other side.  *Id*.  However, the judicially created "fraudulent joinder" doctrine provides an exception to the complete diversity requirement, allowing a district court to assume jurisdiction even if there are nondiverse named defendants at the time of removal.  *Marshall v. Manville Sales Corp*., 6 F.3d 229, 232-33 (4th Cir. 1993).  A finding of fraudulent joinder "permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction."  *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).

To show that a nondiverse defendant has been fraudulently joined:

> the removing party must establish either: [t]hat there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts.

*Id*. at 464. The removing party "must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor." *Marshall*, 6 F.3d at 232-33. Moreover, the court need not limit its jurisdictional inquiry to the facts alleged in the pleadings; the entire record may be considered as a whole in determining whether there is a basis for joinder. *Mayes*, 198 F.3d at 464 (*citing AIDS Counseling and Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990)). As the Fourth Circuit has recognized, the fraudulent joinder standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Id.* (quoting *Hartley v. CSX Transp., Inc*., 187 F.3d 422, 424 (4th Cir. 1999)).

Accordingly, the standard for establishing fraudulent joinder is high, and the defendants' burden is heavy. The defendants must prove either that there is no possibility that the plaintiff could establish a cause of action against the in-state defendant in state court, or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts. *Pritt v. Repub. Nat'l Comm.*, 1 F. Supp. 2d 590, 591 (S.D. W. Va. 1998). Because the defendants do not allege outright fraud in the plaintiffs' pleading of jurisdictional facts, the court must look "to whether there is an arguably reasonable basis for predicting that state law might impose liability on the facts involved." *Rinehart v. Consolidation Coal Co.*, 660 F. Supp. 1140, 1141 (N.D. W. Va. 1987).

The defendants argue that Elaine Rader, a citizen of West Virginia, has been fraudulently joined because none of the allegations in the complaint are sufficient to state a claim against Ms. Rader. In its filings with the court, the plaintiff has responded to this argument with a single page of substantive analysis, in which the plaintiff asserts that it has adequately stated claims

against Ms. Rader in the first two counts of the complaint. Plaintiff's Memorandum in Support of Motion to Remand at 4. Specifically, Ashton argues that it has adequately stated a claim pursuant to the West Virginia Unfair Trade Practices Act (UTPA), W. Va. Code § 33-11-1 *et seq.*, and the West Virginia Clean Claims Act (CCA), W. Va. Code § 33-45-1 *et seq.*. I will therefore examine these counts of the complaint to determine if the plaintiff has any hope of establishing a claim against Ms. Rader under either of these statutes.

Count I of the complaint alleges that both Aetna and Ms. Rader have violated the UTPA. The UTPA is a comprehensive statute designed to "regulate trade practices in the business of insurance" in the state of West Virginia. W. Va. Code § 33-11-1. The defendant asserts that the plaintiff is attempting to bring a claim pursuant to § 33-11-4(9). The plaintiff does not dispute this assertion, and a review of Count I reveals that the plaintiff is in fact seeking liability under § 33-11-4(9). This section describes multiple "unfair claim settlement practices" that give rise to violations of the statutory scheme. While the plaintiff correctly asserts that, in general, "individuals can be held personally liable for engaging in conduct that is prohibited" by the UTPA,[1] Ashton fails to recognize that the facts of this specific case provide absolutely no basis for liability against Ms. Rader under these provisions.

Section 33-11-4(9) of the UTPA is designed to regulate the processing, investigation, and settlement of claims pursuant to insurance policies. It lists a variety of potential violations. As the Supreme Court of Appeals of West Virginia has noted, however, "the UTPA and the tort of

---

[1] See *Taylor v. Nationwide Mut. Ins. Co.*, 589 S.E.2d 55, 60-61 (W. Va. 2003) ("We hold that a cause of action exists in West Virginia to hold a claims adjuster employed by an insurance company *personally liable* for violations of the West Virginia Unfair Trade Practices Act.") (emphasis added).

bad faith apply only to those persons or entities and their agents who are engaged in the business of insurance.  In other words, absent a contractual obligation to pay a claim, no bad faith cause of action exists, either at common law or by statute." *Hawkins v. Ford Motor Co.*, 566 S.E.2d 624, 629 (W. Va. 2002).  On another occasion, the Supreme Court of Appeals of West Virginia construed the scope of the UTPA as "impos[ing] duties upon those in the business of insurance to fairly deal with persons asserting a right or demanding something that is believed to be rightfully due under an *insurance policy*."  The West Virginia statutory scheme defines insurance as "a contract whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies."  W. Va. Code § 33-1-1.

      Although Aetna may properly be described generally as being "in the business of insurance" because it sells insurance policies, this particular case does not arise from any rights created by an insurance policy.  Instead, as I discussed in the foregoing section on ERISA preemption, this case arises from the alleged breach of provisions of the provider agreement.  The provider agreement is not an insurance policy, and the alleged injury in this case does not involve a claim asserted pursuant to an insurance policy.  Simply put, the UTPA is not an available remedy for the injuries allegedly caused by Ms. Rader in this case.  Accordingly, the defendants have successfully demonstrated that the plaintiff cannot state a valid claim against Ms. Rader under the UTPA.  The fraudulent joinder inquiry thus turns to Count II of the complaint.

      Under Count II, the plaintiff alleges that Aetna and Ms. Rader have violated the CCA of West Virginia.  The plaintiff defends the claim against Ms. Rader by asserting that because a private cause of action exists under the UTPA, "the same should apply to the West Virginia

Clean Claims Act." Plaintiff's Memorandum in Support of Motion to Remand at 4. While this assertion may be correct, it has little or no bearing on the specific question of whether a claim may be asserted *against Ms. Rader* under the CCA. The defendants argue that there is no possibility that the plaintiff can establish a claim against Ms. Rader under the CCA.

The civil enforcement provision of the CCA states that "[a]ny provider who suffers loss as the result of *an insurer's* violation of any provision of this article or *an insurer's* breach of any provider contract provision required by this article is entitled to initiate an action to recover actual damages." W. Va. Code §33-45-3. Thus, Ms. Rader may only be held liable for violating the CCA if she is an insurer. The CCA defines an insurer as "any person *required to be licensed under this chapter* which offers or administers as a third party administrator health insurance; operates a health plan subject to this chapter; or provides or arranges for the provision of health care services through networks or provider panels which are subject to regulation as the business of insurance under this chapter. 'Insurer' also includes intermediaries." W. Va. Code §33-45-1(7). The CCA defines an intermediary as "a physician, hospital, physician-hospital organization, independent provider organization or independent provider network, which receives compensation for arranging one or more health care services to be rendered by providers to insureds of a health care plan or insurer." W. Va. Code §33-45-1(11).

In its complaint, the plaintiff asserts that "Aetna is an insurer as that term is defined in the Clean Claims Act," but Ashton makes no similar allegation regarding Ms. Rader. Complaint at ¶ 50. In fact, the record in this case lacks any description of Ms. Rader that would bring her within the scope of the above definitions of "insurer." Instead, Ms. Rader is described as a "Provider Relation Liaison." Complaint at ¶ 5. The defendants have represented to the court that a

Provider Relation Liaison "acts as a liaison between providers and Aetna's administrative and claims departments." Defendants' Memorandum in Opposition to Motion to remand at 14. The plaintiff does not dispute this characterization. Neither party asserts that, as a Provider Relation Liaison, Ms. Rader is licensed or is required to be licensed under the CCA, which is part of the definition of an insurer under the Act. W. Va. Code §33-45-1(7). Accordingly, no basis exists for Ashton to assert a claim against Ms. Rader for liability under the CCA.

### III. Conclusion

In summary, I **FIND** that Ashton has not, and, more importantly, cannot "establish a cause of action against the in-state defendant in state court." *Pritt*, 1 F. Supp. 2d at 591. Accordingly, I **FIND** that Ms. Rader has been fraudulently joined in this action. The plaintiff's motion to remand [Docket 7] is therefore **DENIED**. Because defendant Rader was fraudulently joined, all of the claims against her are **DISMISSED**, and her motion to dismiss [Docket 3] is **DENIED as MOOT**. Pursuant to the "Agreed Order" submitted by the parties and entered on February 8, 2005, the plaintiff has 14 days from the entry of this order in which to respond to Aetna's motion to dismiss [Docket 5], which shall remain pending before the court.

The court **DIRECTS** the Clerk to send a copy of this written opinion and Order to counsel of record and any unrepresented party.

                                      ENTER:      July 27, 2005

                                      JOSEPH R. GOODWIN
                                      UNITED STATES DISTRICT JUDGE