IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ASHTON MEDICAL ASSOCIATES, INC.

                    Plaintiff,

v.                                      CIVIL ACTION NO.  2:05-cv-00023

AETNA HEALTH MANAGEMENT, INC.,
a Delaware corporation, and

                    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Aetna Health Management, Inc.'s ("Aetna") motion for summary judgment [Docket 45]. For the reasons stated herein, the court **GRANTS** the defendant's motion for summary judgment and **DISMISSES** the case from the docket.

**I.    Factual Background**

Plaintiff Ashton Medical Associates ("Ashton") is comprised of a group of four doctors with an office in Kanawha County, West Virginia. Defendant Aetna provides health management services, including contracting with health care providers and facilities to provide access to health care services. On April 1, 2003, Ashton entered into a Physicians Group Agreement ("Agreement") with Aetna. Under the terms of the Agreement, Ashton agreed to provide medical services to patients insured by Aetna, and Aetna agreed to reimburse Ashton for its services at 130 percent of the medicare reimbursement rate.

Ashton alleges, in July 2003, Nancy Politan, an Ashton employee, discovered that Aetna was consistently reimbursing Ashton at a rate lower than the agreed upon rate. On August 4, 2003, Ms. Politan brought these billing errors to the attention of Elaine Raider, a provider relations liaison for Aetna. On September 30, 2003, Ms. Rader informed Ms. Politan that "human errors were causing a problem" and that Aetna was placing Ashton's billing on a computer software program that would eliminate the billing errors. Aetna subsequently informed Ashton that transferring the billing to a computer program would be too expensive and that Aetna would continue to manually process Ashton's submitted claims. Ashton claims the billing errors continued.

On February 4, 2004, Ashton submitted the matter to arbitration pursuant to the Physicians Group Agreement. During the arbitration, the arbitrator ruled that all claims for punitive damages were prohibited. Based on that ruling, Ashton moved for a stay of the proceedings. Aetna agreed to a stay, and the arbitrator stayed the proceeding.

On December 5, 2004, Ashton filed a civil action in the Circuit Court of Kanawha County, West Virginia, against Aetna and Elaine Raider. The Complaint alleges the following causes of action: (1) violations of the West Virginia Unfair Trade Practices Act[1]; (2) violations of the West Virginia Clean Claims Act; (3) breach of contract; (4) fraud; and (5) negligence *per se*.

Defendants timely removed Ashton's civil action to this court. In response to the removal of this action, Ashton filed a motion to remand and each defendant filed a motion to dismiss. On July 27, 2005, this court entered an order denying Ashton's motion to remand. The court also found that Ms. Rader was fraudulently joined and dismissed her from this action.

---

[1] Ashton voluntarily dismissed its Unfair Trade Practice Act claim in its response to Aetna's motion to dismiss.

On January 14, 2005, Aetna filed a motion to dismiss claiming the court should dismiss the case because the claims are arbitrable and because the claims are barred by the terms of a class action settlement. Ashton filed a response to the motion claiming that the claims are not arbitrable because the arbitration agreement was unconscionable. The court issued an order denying the motion to dismiss because a determination as to whether the arbitration clause is unconscionable was premature. On February 8, 2006, the court granted the parties 45 days for limited discovery pertaining to whether the arbitration agreement was unconscionable. On April 12, 2005, Aetna filed the presently pending motion for summary judgment. Aetna asks that the court compel arbitration and dismiss the case from the active docket pursuant to § 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4.

## II.   Standard of Review

To obtain summary judgment, the moving party must show that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential

element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III.     Analysis

Aetna claims it is entitled to summary judgment as a matter of law because Ashton cannot establish that the arbitration agreement is unconscionable. Ashton claims that a genuine issue of material fact exists as to whether the arbitration agreement is unconscionable and summary judgment is inappropriate. In the alternative, Ashton argues that even if the court determines that the arbitration agreement is not unconscionable, it should not dismiss the case because additional issues remain. First, Ashton claims that Aetna waived its right to arbitrate the claims. Ashton also argues that the arbitration agreement does not include statutory claims. The arbitration agreement states,

> 8.3     <u>Arbitration</u>
>
> Any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof, except for temporary, preliminary, or permanent injunctive relief or any other form of equitable relief, shall be settled by binding arbitration administered by the American Arbitration Association ("AAA") and conducted by a sole arbitrator in accordance with the AAA's Commercial Arbitration Rules ("Rules"). The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16, to the exclusion of state laws inconsistent therewith or that would produce a different result, and judgment on the award rendered by the arbitrator may be entered by any court having jurisdiction thereof. Except as may be required by law or to the extent necessary in connection with a judicial challenge, or enforcement of an award, neither a party nor the arbitrator may disclose the existence, content, record or results of an arbitration. Fourteen (14) calendar days before the hearing, the parties will exchange and provide to the arbitrator (a) a list of witnesses they intend to call (including any experts) with a short description of the anticipated direct testimony of each witness and an estimate of the length thereof, and (b) premarked copies of all exhibits they intend to use at the hearing. Depositions for discovery

>purposes shall not be permitted. The arbitrator may award only monetary damages in accordance with this Agreement.

*A.      Unconscionability of the Arbitration Agreement*

Ashton claims summary judgment is not warranted because a reasonable jury could find that the arbitration agreement is unconscionable. Ashton first contends that the issue of whether the arbitration agreement is unconscionable is reserved for the jury. The West Virginia Supreme Court has stated,

> It is presumed that an arbitration provision in a written contract was bargained for and that arbitration was intended to be the exclusive means of resolving disputes arising under the contract; however, where a party alleges he was unwary and taken advantage of, or that the contract was one of adhesion, the question of whether an arbitration provision was bargained for and valid is a *matter of law for the court to determine* by reference to the entire contract, the nature of the contracting parties, and the nature of the undertakings covered by the contract.

*State ex rel. Saylor v. Wilkes*, 613 S.E.2d 914, 922 (W. Va. 2005) (citing Syl. Pt. 3 *Bd. of Educ. of County of Berkeley v. W. Harley Miller, Inc.*, 236 S.E.2d 439 (1977)) (emphasis added). "Unconscionability is an equitable principle, and the determination of whether a contract or a provision therein is unconscionable should be made by the court." *State ex rel. Dunlap v. Berger*, 567 S.E.2d 265, 271 (W. Va. 2002). Accordingly, contrary to Ashton's contentions, it is within the court's province to determine whether the agreement is unconscionable.

Ashton also claims the arbitration agreement is a contract of adhesion because Aetna gave Ashton a form contract with a "take it or leave it attitude." Generally, an adhesion contract is a "form contract[] that is submitted by one party on the basis of this or nothing." *Id.* at 273. Because the bulk of the contracts entered in the United States are adhesion contracts, courts do not automatically invalidate such agreements. *Id.* An adhesion contract will be denied enforcement "if,

-5-

considered in its context, it is unduly oppressive or 'unconscionable.'" *Id.* at 274 n.4. "Unconscionability in West Virginia . . . requires both 'gross inadequacy in bargaining power' and 'terms unreasonably favorable to the stronger party.'" *Adkins v. Ayers*, 303 F.3d 496, 502 (4th Cir. 2002) (citing *Troy Mining Corp. v. Itmann Coal Co.*, 346 S.E.2d 749, 753 (W. Va. 1986)).

Ashton's contention that the arbitration agreement is a contract of adhesion is without merit. Ashton wrote Aetna a letter on November 15, 2002, stating that it was unwilling to continue its relationship with Aetna unless a higher rate was negotiated. In response, Aetna wrote a letter which indicated it intended to raise the rate. These two letters indicate that the contract was not a contract of adhesion because Ashton could bargain with Aetna regarding the terms of the contract. Similarly, the two letters indicate that a gross inadequacy in bargaining power does not exist. As a result, the court **FINDS** that the arbitration agreement is not a contract of adhesion.

Ashton also claims the arbitration agreement is unconscionable because it denies Ashton the ability to fully and effectively vindicate its rights. Ashton relies on *Dunlap* for this proposition. In *Dunlap*, the West Virginia Supreme Court stated,

> A pre-dispute agreement to use arbitration as an alternative to litigation in court may be enforced pursuant to the FAA only when arbitration, although a different forum with somewhat different and simplified rules, is nonetheless one in which the arbitral mechanisms for obtaining justice permit a party to fully and effectively vindicate their rights.

*Dunlap*, 567 S.E.2d at 572 n.3.[2] However, for the court to hold that the arbitration clause is unconscionable, Ashton must demonstrate "that arbitration would 'prohibit or substantially limit a person from enforcing and vindicating rights and protection or from seeking and obtaining statutory

---

[2] In *Dunlap,* the West Virginia Supreme Court addressed a situation where a contract of adhesion existed. *Dunlap*, 567 S.E.2d at 275. As stated, the arbitration agreement in the case at hand was not a contract of adhesion.

or common-law relief and remedies.'" *Am. Gen. Life and Accident Ins. Co., v. Wood,* 429 F.3d 83, 91 (4th Cir. 2005) (citing *Dunlap*, 567 S.E.2d at 275)).

In Dunlap, the court noted that the arbitration agreement prohibited the plaintiff from seeking an award of punitive damages.[3]  *Dunlap*, 567 S.E.2d at 278  As a result, the court held that the arbitration agreement was unconscionable because it contained an exculpatory clause that barred a remedy "that [is] essential to the enforcement and effective vindication of the public purposes and protections of the underlying law."  *Id.* at 279.  Unlike the arbitration agreement in *Dunlap,* however, the arbitration agreement, at issue here, does not contain an exculpatory provision that limited the arbitrator's ability to enforce rights or grant relief.  The arbitration agreement, thus, does not substantially limit or prohibit Ashton from enforcing rights or obtaining relief.  Accordingly, the court **FINDS** the arbitration agreement is not unconscionable as a matter of law.

*II.    Additional Issues*

Ashton claims the court should not dismiss the case because a jury could find in its favor on two additional issues.  First, Ashton argues that a jury could find that Aetna waived its arbitration rights.  Ashton claims that Aetna obstructed and delayed the arbitration process by: (1) refusing to discuss settlement of the case, (2) attempting to get Ashton's arbitration claims dismissed, (3) seeking a continuance to, in part, discuss settlement and then refusing to engage in settlement discussions, and (4) failing or refusing to pay its share of the arbitration fees.  A party bears a heavy burden when it asserts that a waiver of the right to arbitrate occurred.  *American Recovery Corporation v. Computerized Thermal Imaging*, 96 F.3d 88, 95 (4th Cir. 1996).  Ashton, however,

---

[3] The arbitration agreement in *Dunlap* stated, "No arbitrator may make an award of punitive damages." *Dunlap*, 567 S.E.2d at 271.

cites no authority for the proposition that Aetna's conduct constitutes a waiver of its right to arbitrate. Even if proven, Aetna's conduct did not constitute a waiver of the right to arbitrate.

Next, Ashton argues that it did not waive its right to bring statutory claims in court. Relying on *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70 (1998), Ashton contends that the clause requiring arbitration of "any" claims does not include statutory claims. As argued by Aetna, however, the holding of *Wright* does not apply because the Agreement between the parties is a contract and not a collective bargaining agreement. In *Wright*, the Supreme Court held that an arbitration provision in a *collective bargaining agreement* must contain a "clear and unmistakable" waiver of a statutory anti-discrimination claim before the arbitration requirement for such statutory claims is waived. *Id.* at 79-80. "Wright's 'clear and unmistakable' standard is based upon a concern about allowing a union to waive an individual employee's statutory rights – i.e., a concern about the waiver of one's rights by someone else. Where, however, one waives ones's own rights, the 'clear and unmistakable' standard is not required.'" *Intestate Brands Corp. v. Baker Drivers*, 167 F.3d 764, 767 (2d Cir. 1999); *see also Gilmer v. Interstate/Johnson Lane*, 200 U.S. 20 (1991) (holding that arbitration clause covering "any dispute, claim or controversy" required arbitration of claim brought under Age Discrimination in Employment Act by individual employee in securities industry). Accordingly, the court declines to extend the holding of *Wright* to include cases, such as this case, in which contracts executed by individuals are at issue.

Because the arbitration agreement is enforceable with respect to all of Ashton's claims, the court **GRANTS** Aetna's motion for summary judgment. The FAA provides for "orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration

agreement." *Gilmer*, 500 U.S. at 25. Pursuant to § 4 of the FAA, 9 U.S.C. § 4, the court **COMPELS** arbitration and **DISMISSES** the case from the active docket.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    June 16, 2006

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE